UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brigitte Chomilo,

                Plaintiff,

                                      Civ. No. 06-3103 (RHK/AJB)
                                      **MEMORANDUM OPINION
                                      AND ORDER**

v.

Shapiro, Nordmeyer & Zielke, LLP,

                Defendant.

---

Thomas J. Lyons, Jr., Consumer Justice Center, P.A., Thomas J. Lyons, Sr., Lyons Law Firm, P.A., Vadnais Heights, Minnesota, for Plaintiff.

Barry A. O'Neil, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

Plaintiff Brigitte Chomilo has filed claims under the Fair Debt Collection Practices Act ("FDCPA") against a law firm, Defendant Shapiro, Nordmeyer & Zielke, LLP ("SNZ"). Chomilo asserts that SNZ violated several provisions of the FDCPA governing third-party communications when it published a notice of mortgage foreclosure containing certain debt information about her. SNZ now moves for summary judgment, arguing that it complied with Minnesota law and with the only provision of the FDCPA that applied to its conduct. For the reasons set forth below, the Court will grant SNZ's Motion.

# BACKGROUND

On November 8, 2005, Chomilo executed a note and a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") on real property located in Minneapolis, Minnesota. (Zielke Aff. Exs. B, C.) Chomilo signed the Mortgage before a notary public, and on January 5, 2006, it was registered with the Hennepin County Registrar of Titles. (Id. Ex. C at 15.)

Chomilo defaulted on the note a few months later. MERS assigned the Mortgage to Freemont Investment & Loan ("Freemont") and executed a power of attorney authorizing SNZ to foreclose the Mortgage by advertisement. (Id. at ¶ 6, Exs. E, F.) SNZ's primary business purpose is to institute nonjudicial foreclosures of mortgages by advertisement under Minn. Stat. § 580.01 *et. seq*.[1] (Zielke Aff. at ¶ 17.) Freemont provided SNZ with the information that demonstrated Chomilo was the "Mortgagor" on the property. (Id. at ¶ 2, Ex. A.) Freemont also advised SNZ that the Mortgage was in default, which triggered Freemont's authority to foreclose under the terms of the Mortgage. (Id.)

On April 11, 2006, SNZ obtained a copy of the Certificate of Title to confirm the title status of the property. (Id. at ¶ 3, Ex. B.) The Certificate of Title verified that Chomilo was the registered owner of the property and that the Mortgage had been filed with the Registrar of Titles for Hennepin County on January 5, 2006. (Id. at ¶¶ 3, 4, Exs. B, C.)

---

[1] SNZ estimates that at least 50% of the time, a mortgagor will pay the reinstatement amount to avoid foreclosure of the property. (Lyons, Sr. Aff. Ex. C. at 50.)

SNZ began the foreclosure process by sending a letter to Chomilo on April 11, 2006, indicating that it was hired "to initiate foreclosure proceedings" and that the information provided to Chomilo in the letter was required by the FDCPA. (Id. at ¶ 5, Ex. D.) The letter informed Chomilo that she owed $245,258.84 to Freemont and that she "MUST" contact SNZ to obtain a payoff quote. (Id.)

On April 20, 2006, SNZ faxed a Notice of Mortgage Foreclosure Sale to Finance and Commerce[2] and requested that it publish the Notice for six consecutive weeks prior to the planned June 6, 2006 sale. (Id. at ¶ 8, Ex. G.) SNZ also prepared a notice of pendency of foreclosure pursuant to Minn. Stat. § 580.032, subd. 3, for filing with the Registrar of Titles. (Id. at ¶ 9, Ex. H.) SNZ filed the assignment, the power of attorney, and the notice of pendency of foreclosure with the Registrar of Titles for Hennepin County before the first date of publication of the foreclosure notice as required by Minn. Stat. §§ 580.02(3) and 580.032, subd. 3. (Id. at ¶ 10, Ex. I.)

On April 25, 2006, the occupants of the property were served with notice of the foreclosure sale and the requisite Foreclosure Advice Notice pursuant to Minn. Stat. § 580.041. (Id. at ¶ 11, Ex. J.) SNZ then published six notices of the foreclosure sale in the newspaper prior to the foreclosure date of June 6, 2006. (Id. at ¶ 12, Ex. K.)

Meanwhile, the notice letter SNZ sent to Chomilo on April 11, 2006 had been returned to SNZ with no forwarding address. (Id. at ¶ 13.) Although Minnesota law only requires that the occupant of the property be served with the notice of the sale, SNZ's

---

[2] Finance and Commerce is a daily newspaper in the Twin Cities devoted exclusively to business.

practice is to mail a copy of the first published clipping to the mortgagor of the property. (Id.)  As such, SNZ located another address for Chomilo, and on June 2, 2006, SNZ sent Chomilo a letter and the published newspaper clipping, which advised her of the foreclosure sale.  (Id. at ¶ 13, Ex. L.)  The letter and the newspaper clipping also stated: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION WILL BE USED FOR THAT PURPOSE."  (Id. at Exs. L, K (capitalization in original).)  SNZ never received a response to its letter.

The foreclosure sale occurred on June 6, 2006.  (Id. at ¶ 14, Ex. M.)  SNZ bid $220,344.52 at the foreclosure sale, based on the instructions from Freemont.  (Id.) Chomilo then filed the instant suit against SNZ, alleging that SNZ violated 15 U.S.C. §§ 1692c(b), 1692d, 1692d(3), and 1692f.  (Compl. ¶¶ 8, 9, 11.)  SNZ has now moved for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light

most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.      The FDCPA**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In order to establish a violation of the FDCPA, a plaintiff must demonstrate that: "(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA."  Russey v. Rankin, 911 F. Supp. 1449, 1453 (D.N.M. 1995) (citing Kolker v. Duke City Collection Agency, 750 F. Supp. 468, 469 (D.N.M. 1990)).

As a threshold matter, the Court must determine whether SNZ falls within the FDCPA's definition of a "debt collector."

**II.     Definition of "debt collector" under the FDCPA**

The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute places limits on the term "debt collector" by providing that "[t]he term does not include" six specific classes of debt collectors. Id. Law firms who initiate foreclosures of mortgages on real property are not included among the six excluded classes. But, the FDCPA states that "*[f]or the purpose of section 1692f(6) of this title*, [debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is *the enforcement of security interests*." Id. (emphasis added).

Chomilo argues SNZ meets the statute's general definition of a debt collector because SNZ's principal purpose is the collection of debts owed to another. (Pl.'s Opp'n Mem. at 8-12.) SNZ, however, argues that section 1692f(6) is the only section that applies to its conduct because its primary business purpose is the enforcement of security interests. (Def.'s Mem. at 15-22.)

There is a split of authority as to whether enforcers of security interests are "debt collectors" for purposes of section 1692f(6) only or, whether they are subject to the entire FDCPA if they meet the general definition of a "debt collector" of section 1692a(6). Chomilo relies on Kaltenbach v. Richards, 464 F.3d 524 (5th Cir. 2006), to support her

6

contention that the entire FDCPA, not just section 1692f(6), applies to the enforcement of security interests.³  Id. at 528 (holding that party who satisfies section 1692a(6)'s general definition of "debt collector" is debt collector for entire FDCPA even if it is only enforcing security interests).⁴  SNZ, on the other hand, relies on Jordan v. Kent Recovery Services, Inc., 731 F. Supp. 652, 657 (D. Del. 1990), for the contrary proposition: enforcers of security interests are debt collectors only for purposes of section 1692f(6).

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly express legislative intention to the contrary, that language must ordinarily be regarded as conclusive."  See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).  While the Court acknowledges that there is authority to support both sides of this argument, it concludes that Congress dubbed

---

³ Chomilo also argues that section 1692i(a)(1) of the FDCPA deals with the enforcement of security interests, which suggests that 1692f(6) is not the only applicable section.  Section 1692i(a)(1) is a venue provision that provides:

> Any debt collector *who brings any legal action* on a debt against any consumer shall . . . in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located[.]

15 U.S.C. § 1692i(a)(1) (emphasis added).  However, SNZ has not brought a legal action against Chomilo, as it was conducting a nonjudicial foreclosure; therefore, section 1692i(a)(1) is not applicable to this case.

⁴ See also Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376-78 (4th Cir. 2006) (finding that if a party "meets the statutory definition of 'debt collector,' [he] can be covered by all sections of the Act, not just § 1692f(6), regardless of whether [he] also enforces security interests"); Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 236 (3rd Cir. 2005) (affirming summary judgment for debtor where private attorney for city demanded payment of municipal water bills; court found that municipal lien on real estate did not remove activity from scope of FDCPA).

enforcers of security interests to be "debt collectors" only for <u>one specific provision of the FDCPA – section 1692f(6)</u>.  <u>See</u> Jordan, 731 F. Supp. at 657; <u>see</u> <u>also</u> James v. Ford Motor Credit Co., 47 F.3d 961, 962 (8th Cir. 1995) (citing to Jordan and finding that repossession companies are generally not subject to the FDCPA except for section 1692f(6)).  "Such a purposeful inclusion for one section of the FDCPA implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA."  Id.  In this Court's view, Congress would not have made such a fine distinction unless it intended to limit the definition of "debt collector" to section 1692f(6).

The Court's conclusion is bolstered when section 1692f(6) is read in conjunction with its legislative history, as the two provide "the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest."  Jordan, 731 F. Supp. at 657.  Section 1692f(6) prohibits the following conduct:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).  The Senate Report of the Committee on Banking, Housing, and Urban Affairs uses the term "debt collector" interchangeably with "collection agencies," a term referring to those firms engaged in the collection of money.  S. Rep. No. 95-382,

8

at 2-5 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1696. The court in Jordan indicated that the FDCPA was enacted "to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." Jordan, 731 F. Supp. at 658 (citation omitted).

However, unlike a debt collector, "an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns." Id. Therefore, Jordan reasoned that the evil sought to be prevented by proscribing the conduct of debt collectors - namely, "harassing attempts to collect money which the debtor does not have due to misfortune" - is not "implicated by the actions of an enforcer of a security interest with a 'present right' to the secured property." Id. As such, the court concluded that "the legislative history confirms that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6)." Id. (citation omitted). This Court agrees.

Because Congress purposefully made a distinction between a debt collector and an enforcer of a security interest, the Court concludes that an enforcer of a security interest, such as a law firm foreclosing on mortgages of real property (like SNZ here), falls outside the ambit of the FDCPA except for the provisions of section 1692f(6). Other courts have reached the same conclusion. See e.g., Montgomery v. Huntington Bank, 346 F.3d 693, 700-01 (6th Cir. 2003) ("except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition

9

of a debt collector under the FDCPA."); Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices" but noting that section 1692f(6) applies to security enforcement actions); Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (concluding that activity of foreclosing on property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.); Barbatini v. Quality Loan Serv. Corp., No. CV-06-0065-EFS, 2007 WL 26775, at *3 (E.D. Wash. Jan. 3, 2007) ("the inclusion of an enforcer of a security interest in § 1692f(6) implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA" and concluding that "the enforcement of a security interest through a nonjudicial foreclosure was not the collection of a debt for purposes of the FDCPA.").

Likewise, this Court finds Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *1 (D.N.H. Feb. 9, 2005), instructive. In Beadle, the defendant law firm was retained by Countrywide Home Loans, Inc. to foreclose on a mortgage on real property owned by plaintiffs. Id. at *2. The defendant initiated the foreclosure process by sending the plaintiffs two letters, which contained FDCPA warnings. Id. The defendant also placed newspaper advertisements announcing the foreclosure sale. Id. The plaintiffs sued, alleging that the defendant was a "debt collector" and had violated certain provisions of the FDCPA. Id. The court acknowledged that "except for purposes of

§ 1692f(6), an enforcer of a security interest . . . does not meet the statutory definition of a debt collector under the FDCPA." Id. at *3 (quoting Montgomery, 346 F.3d at 700-01). The key question for the court, however, was not whether the defendant law firm was a "debt collector" but whether it was engaged in collecting a debt. Id. at *3. After reviewing the applicable case law, the court found that "it seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA." Id.

Here, there is no dispute SNZ was enforcing a security interest through Minnesota's nonjudicial foreclosure-by-advertisement statute. To entitle a party to foreclose by advertisement under Minnesota law, (1) there must be a default in the mortgage, (2) there must be no action pending at law to recover the debt, and (3) the mortgage and any assignment must be recorded. Minn. Stat. § 580.02. Once these requirements are met, the foreclosing party is required to give six weeks' published notice "that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof." Minn. Stat. § 580.03. The undisputed record shows that SNZ met all three of these requirements and published notice of the mortgage foreclosure sale for six consecutive weeks. Minnesota law also requires that the published notice include certain information, such as the name of the mortgagor, the date of the mortgage, the location of the property, the principal amount secured, and the amount claimed to be due on the mortgage. Minn. Stat. § 580.04. There is no dispute that each publication contained such information. Notably, SNZ did not – and could not – seek a deficiency judgment from

Chomilo as a result of the foreclosure.  See Minn. Stat. § 582.30, subd. 2 (stating that a deficiency judgment is not allowed in foreclosure by advertisement).  Thus, it is undisputed that SNZ was conducting a nonjudicial foreclosure and did not seek judgment against Chomilo personally.  Under Jordan and its progeny, therefore, SNZ was not a "debt collector" under the FDCPA, except for purposes of section 1692f(6).

Chomilo, however, asserts that SNZ held itself out as a "debt collector" in its letters and notices by including FDCPA disclaimers and is therefore "estopped" from asserting that it is not a "debt collector."  (Pl.'s Opp'n Mem. at 12-15.)  The Court disagrees.  See Alexander v. Omega Mgmt., Inc., 67 F. Supp. 2d 1052, 1056 (D. Minn. 1999) (finding that inclusion of FDCPA language in notices does not estop a defendant from denying that it is a debt collector).  Equitable estoppel has three important elements:

> First, the actor, who usually must have knowledge, notice or suspicion of the true facts, communicates something to another in a misleading way, either by words, conduct or silence. Second, the other in fact relies, and relies reasonably or justifiably, upon that communication. And third, the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

Id. (citation omitted).  Here, Chomilo fails to show that she relied upon SNZ's FDCPA disclaimers to her detriment, and therefore cannot establish equitable estoppel.  Furthermore, SNZ argues that it only included FDCPA warnings in its foreclosure communications out of an abundance of caution.  (Def.'s Mem. at 20.)  Indeed, if SNZ includes FDCPA disclaimers in its notices then it may be seen as holding itself out as a debt collector under the FDCPA, but if it does not include such disclaimers then it subjects itself to potential liability for failing to comply with the FDCPA if a court were

to determine that SNZ is a debt collector for purposes of the entire FDCPA and not just section 1692f(6).[5] The Court will not penalize SNZ for having to make a Hobson's choice in this unsettled area of the law. SNZ was conducting a nonjudicial mortgage foreclosure by advertisement pursuant to Minnesota law. It was reasonable for SNZ to err on the side of caution and include the FDCPA disclaimers in its communications to Chomilo.

Accordingly, the Court concludes that Congress intended an enforcer of a security interest to fall outside the ambit of the FDCPA except for the provisions of section 1692f(6). Because SNZ was executing a nonjudicial foreclosure proceeding rather than collecting a debt, its activities are subject only to section 1692f(6). As such, the Court finds that Chomilo's claims under sections 1692c(b), 1692d, and 1692d(3) fail as a matter of law. Thus, the Court will only consider whether SNZ violated section 1692f(6).

### III.    SNZ did not violate 15 U.S.C. § 1692f(6) [6]

Section 1692f(6)(A), the only relevant section here, prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" Chomilo fails to articulate more than a mere conclusory assertion that SNZ violated this section. Here, the Certificate of Title shows

---

[5] Section 1692e(11) of the FDCPA requires that a debt collector place a notice on all communications to the debtor that the communication is part of a collection effort, and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11). Failure to do so is considered a violation of the FDCPA.

[6] Chomilo argues that SNZ violated section 1692f(1). (Pl.'s Opp'n Mem. at 18.)  However, as explained above, only section 1692f(6) is applicable here.

that Chomilo was the registered owner of the property and the Mortgage was filed with the Registrar of Titles for Hennepin County. There is no dispute that Chomilo defaulted on the Mortgage, MERS assigned the Mortgage to Freemont, and Freemont retained SNZ to initiate foreclosure proceedings by advertisement under Minnesota law. The Court finds that all of the rights and possession to the property were conclusively established here, and concludes that SNZ did not violate section 1692f(6) of the FDCPA.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 13) is **GRANTED** and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 12, 2007

                                          s/Richard H. Kyle
                                          RICHARD H. KYLE
                                          United States District Judge